FILED
2019 Jul-12  PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DR. JOSEPH F. O'TOOLE, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:_____** |
| | ) | |
| **THE DIOCESE OF BIRMINGHAM** | ) | **JURY TRIAL DEMANDED** |
| **IN ALABAMA; REVEREND** | ) | |
| **ROBERT J. SULLIVAN; AND** | ) | |
| **JULIE EMORY-JOHNSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Dr. Joseph F. O'Toole, Jr., by and through his attorney of record, and for his Complaint against the Defendants, The Diocese of Birmingham in Alabama, Reverend Robert J. Sullivan, and Julie Emory-Johnson, states as follows:

## NATURE OF THE CASE

1.     This is a lawsuit brought by the Plaintiff, Dr. Joseph F. O'Toole, Jr., who has been affected by the discrimination and wrongful acts alleged in the claims set forth below, seeking permanent relief from unlawful discriminatory practices involving age discrimination, breaches of contract, and fraud under Alabama law.  The practices committed by the Defendants violate the Age

Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq. ("ADEA"), on the basis of age. In addition, the Plaintiff, Dr. Joseph F. O'Toole, Jr., has been affected by the breaches of contract and fraud by Defendants The Diocese of Birmingham in Alabama and its agents, Defendants Reverend Robert J. Sullivan and Julie Emory-Johnson.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      O'Toole has fulfilled all conditions precedent to filing this action under the ADEA. He filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge Number 420-2018-03804, on August 21, 2018 [attached hereto as Exhibit "A"]. O'Toole timely files this action within ninety (90) days of receipt of his Notice of Right to Sue from the EEOC, dated as having been mailed on April 10, 2019, but not received until April 15, 2019 [attached hereto as Exhibit "B"].

4.      The Defendants are located within this judicial district and division. This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391(b).

## PARTIES

5.    Plaintiff, Dr. Joseph F. O'Toole, Jr. ("O'Toole" or "Plaintiff"), is a seventy-four year old male resident of the state of Alabama and this judicial district.  Dr. O'Toole was the principal of John Carroll High School in Birmingham, Alabama, until March 7, 2018.  As the principal, O'Toole was an employee, under contract, at all times material herein, with Defendant The Diocese of Birmingham in Alabama, within the meaning of the ADEA.

6.    Defendant The Diocese of Birmingham in Alabama ("The Diocese" or "Defendant Diocese") is a religious organization, and part of the Roman Catholic Church, that oversees the operations of the Roman Catholic Church in most of Alabama.  The Diocese operates several parochial schools, two of which are involved in this action.  The Diocese is located in the city of Birmingham, state of Alabama and this judicial district.  At all times material herein, Defendant The Diocese of Birmingham in Alabama was the employer of O'Toole within the meaning of the ADEA.

7.    Defendant Reverend Robert J. Sullivan was President of John Carroll Catholic High School and O'Toole's direct supervisor at all times material herein.

8.    Defendant Julie Emory-Johnson was the Director of Catholic Schools, Pro Tempore, at all times material herein.

## STATEMENT OF FACTS

9.     Dr. Joseph F. O'Toole, Jr. is a seventy-four year old white male. O'Toole was terminated from employment with Defendant The Catholic Diocese of Birmingham in Birmingham, Alabama on March 7, 2018.

10.     Prior to O'Toole's termination, he had worked for the Catholic Diocese for three years. Dr. O'Toole began his career at John Carroll Catholic High School, which is a Diocesan high school, in July 2015, as a theology teacher, reporting to the department chair, Sister Mary Elizabeth.

11.     In February 2017, Dr. O'Toole was appointed interim principal of John Carroll Catholic High School and reported to Reverend Sullivan.

12.     Reverend Sullivan and Dr. O'Toole reached a specific agreement that Dr. O'Toole would become Principal of John Carroll, and that would be a three to five year turnaround process.

13.     In April 2017, Dr. O'Toole was appointed principal of John Carroll Catholic High School for 2017 and 2018 and continued to report to Reverend Sullivan.

14.     In May 2017, Reverend Sullivan drafted an e-mail to John Carroll faculty, families, and students announcing that Dr. O'Toole had accepted the position of Principal of John Carroll and that he looked "forward to working with him for years to come."

15.     Reverend Sullivan told Assistant Principal Brian D. Connell that he fully supported Dr. O'Toole's three to five year turnaround plan.

16.     Throughout Dr. Toole's time as Principal, he met with Reverend Sullivan every seven to ten days. Dr. O'Toole was routinely told by Reverend Sullivan that he, Sullivan, was pleased with his work and to "keep doing what you are doing; you've turned this place around."

17.     In January 2018, Dr. O'Toole received an e-mail from the Diocese asking if he intended to renew his contract. Reverend Sullivan saw the e-mail from the Diocese and stated that he wanted to keep "this three to five year thing going." Reverend Sullivan gave Dr. O'Toole a $10,000 raise.

18.     On February 16, 2018, Julie Emory-Johnson, the Director of Catholic Schools, Pro Tempore, wrote to O'Toole informing him that he would be offered a contract as Principal again for the 2018-2019 school year and Reverend Sullivan "will work out the details of the contract with [Dr. O'Toole]" [attached hereto as Exhibit "C"].

19.     In that letter, Director Julie Emory-Johnson encouraged Dr. O'Toole, saying, "You have many gifts that have helped keep your school functioning as well as it does. Continue the good work."

20.     On March 7, 2018, less than a month later, O'Toole met with his supervisor, Reverend Sullivan.  Sullivan informed O'Toole that he was terminating

him, saying "I need someone long term and you cannot provide that, you're 72, go home, relax."

21.    Dr. O'Toole believes he has been discriminated on the basis of his age, in that he was told by Defendant Sullivan during the meeting of March 7, 2018, "I need someone long term and you cannot provide that, you're 72, go home, relax."

22.    Following Dr. O'Toole's termination, Reverend Sullivan expressed regret and apologized to O'Toole for how he, Sullivan, handled the matter. Sullivan told O'Toole he had done wonderful work during his time at John Carroll.

23.    In March 2018, Dr. O'Toole met with Bishop Baker to complain about being terminated from John Carroll because of his age.

24.    At that meeting, Bishop Baker apologized to O'Toole and told him that if he, Bishop Baker, had known or been consulted, he would not have allowed O'Toole's termination to occur.

25.    Bishop Baker told O'Toole that he held him in the highest regard and that he, O'Toole, did amazing work at John Carroll and was loved and respected by all.

26.    In July 2018, O'Toole became the Assistant Principal for Prince of Peace Catholic School, under a one year contract which provided a $62,000 salary [attached hereto as Exhibit "E"].

27.    O'Toole reported to Connie Angstadt, the Principal, and Angstadt reported to Father Fallon, the Pastor.

28.    In August 2018, O'Toole filed a discrimination charge with the Equal Employment Opportunity Commission, alleging that the Diocese unlawfully discriminated against him by terminating his employment because of his age.

29.    In September 2018, Dr. O'Toole heard loud yelling and screaming coming from the locker rooms at Prince of Peace Catholic School. Without entering the locker rooms, O'Toole called from the hallway for some female students to leave the locker room and enter the gym.

30.    Dr. O'Toole then yelled toward the boys locker room for any boys to get into the gym as well.

31.    Afterward, Dr. O'Toole was thanked by two physical education teachers for hurrying the students along.

32.    Later that day, Principal Angstadt informed Dr. O'Toole about a rumor regarding him entering the girl's locker room and chasing girls into the gym. Dr. O'Toole explained what had actually occurred. Mrs. Angstadt replied that there was no need to worry.

33.    Over the weekend, Dr. O'Toole met with Principal Angstadt to walk her through the event. After the walkthrough, Principal Angstadt told Dr. O'Toole that she was completely comfortable that he had done nothing wrong. Mrs.

Angstadt told Dr. O'Toole that he would meet with the parents on Monday morning to explain what had actually happened.

34.     On Monday, Principal Angstadt informed Dr. O'Toole that Father Fallon and the Diocese were now involved, and that Dr. O'Toole would not be allowed to attend the parent meeting.  Mrs. Angstadt also informed Dr. O'Toole that she would be present at the meeting, but would not be allowed to speak.

35.     On that same Monday, Father Fallon met with Dr. O'Toole and told him that he saw nothing wrong with what he had done.  Father Fallon stated that he believed Principal Angstadt had not handled the matter appropriately.

36.     Dr. O'Toole asked Father Fallon why he would not be allowed to speak to the parents.  Father Fallon explained that the situation "had gotten a lot bigger than the Parrish," and that with the Diocese involved, he could not direct the matter any further.

37.     Kelly Doss, the manager of the Parrish business office, escorted Dr. O'Toole to the main conference room of the building to gather his school bag and then leave the building. Later that day, Father Fallon came to Dr. O'Toole's home and informed him that the investigation was complete.

38.     Father Fallon informed Dr. O'Toole that even though he had done nothing wrong, he would have to resign or be terminated.

39.    Dr. O'Toole refused to resign, so Father Fallon informed Dr. O'Toole that he would have to let him go.  Dr. O'Toole then agreed to retire in lieu of termination.

40.    Afterward, Father Fallon reiterated to Dr. O'Toole that he had done nothing wrong.

41.    In September, just one month after the EEOC charge was filed against the Diocese, the Diocese forced O'Toole to retire in lieu of termination, using an event in which Dr. O'Toole did nothing wrong as a pretext to get rid of him.

## COUNT ONE
## DISCRIMINATION: ADEA

42.    Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

43.    Dr. O'Toole was in a protected class and came within coverage of the Age Discrimination in Employment Act of 1967 ("**ADEA**"), and, but for his age and in express violation thereof, his employer, Defendant Diocese, terminated O'Toole.  The reasons given for said Defendant's decision to terminate O'Toole constituted direct evidence of age discrimination, and such action was taken with malice or reckless indifference to the federally-protected rights of O'Toole.

44. As a result of such termination, Dr. O'Toole was caused to be injured and damaged; to have his career significantly and adversely impacted; and to forego compensation and benefits.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

a. Placement in the position(s) in which he would have worked absent said defendant's discriminatory treatment, or, in lieu thereof, front pay;

b. Injunctive relief;

c. Pre-judgment interest;

d. Attorneys' fees;

e. Costs;

f. Back pay;

g. Liquidated damages to deter such conduct in the future; and

h. Such other legal or equitable relief as may be appropriate to effectuate the purposes of the **ADEA** or to which he may be entitled.

## COUNT TWO
## RETALIATION: ADEA

45. Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

46.    In taking the actions alleged in Paragraphs 29 to 44 herein, Defendant intentionally and willfully retaliated against O'Toole in violation of his rights protected by the ADEA, including his right to voice complaints of discrimination. Said actions of Defendant were taken with malice or reckless indifference to the federally-protected rights of O'Toole.

47.    As a proximate consequence of the ADEA violations, O'Toole has suffered and will continue to suffer damage to his professional life and future career opportunities and non-pecuniary damages.

48.    O'Toole has satisfied all administrative prerequisites to bringing this claim, the claims herein are within the scope of the EEOC Charge and were part of the investigation by the EEOC, and/or this Honorable Court has ancillary jurisdiction over O'Toole's claims of retaliation which arose out of his protected activity in bringing his prior charge of discrimination.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

a.    Placement in the position(s) in which he would have worked absent said defendant's discriminatory treatment, or, in lieu thereof, front pay;

b.    Injunctive relief;

c.    Pre-judgment interest;

d.     Attorneys' fees;

e.     Costs;

f.     Back pay;

g.     Liquidated damages to deter such conduct in the future; and

h.     Such other legal or equitable relief as may be appropriate to effectuate the purposes of the **ADEA** or to which he may be entitled.

## COUNT THREE
## BREACH OF CONTRACT: JOHN CARROLL HIGH SCHOOL

49.     Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

50.     O'Toole entered into an employment contract with Defendant The Diocese of Birmingham in Alabama [attached hereto as Exhibit "D"].

51.     The contract provides for a total compensation of $90,000 due to O'Toole, payable over 26 periods.

52.     The contract contained a definite term of employment: June 24, 2017 through June 22, 2018.

53.     O'Toole performed his obligations under the contract.

54.     As the actual and proximate result of this breach, O'Toole suffered lost wages and other employment benefits.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

a.   Placement in the position(s) in which he would have worked absent the defendant's discriminatory treatment, or, in lieu thereof, front pay;

b.   Injunctive relief;

c.   Pre-judgment interest;

d.   Attorneys' fees;

e.   Costs;

f.   Back pay; and

g.   Such other legal or equitable relief as may be appropriate or to which he may be entitled.

## COUNT FOUR
## FRAUD
## (DEFENDANTS THE DIOCESE, JULIE EMORY-JOHNSON, REVEREND SULLIVAN)

55.   Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

56.   O'Toole alleges that Defendant The Diocese of Birmingham in Alabama, by and through its agents, Sullivan and Emory-Johnson, who were acting within the line and scope of their employment, caused and intended to cause or negligently, inadvertently, or mistakenly caused, Plaintiff to rely on fraudulent

material representations, or other wrongful acts, to his detriment by engaging in the conduct set forth hereinabove.

57.    Specifically, as set forth in Paragraphs 12 through 19 above, Defendants Julie Emory-Johnson and Reverend Sullivan, as agents for The Diocese, made representations to O'Toole that, throughout his employment, he would work for years to come, that the three to five year turnaround plan should be kept going, and that Reverend Sullivan would work out the details of the 2018-2019 Principal contract. Those statements were made with the knowledge that they were false at the time they were made and with the intent that O'Toole would rely on them to his detriment.  At the time of making those statements, said Defendants had no intent to perform those promises and Defendants Sullivan and Emory-Johnson intended, by those statements, to deceive O'Toole.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

a.    Compensatory damages;

b.    Mental anguish damages;

c.    Punitive damages to deter such conduct in the future;

d.    Costs;

e.    Interest;

f.    Attorneys' fees; and

g.    Any and all other relief to which he may reasonably be entitled.

## COUNT FIVE
## BREACH OF CONTRACT: PRINCE OF PEACE

58.    Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

59.    O'Toole entered into an employment contract with Defendant The Diocese of Birmingham in Alabama regarding Prince of Peace Catholic School

60.    The contract provides for a total compensation of $62,000 due to O'Toole, payable over 26 periods.

61.    The contract contained a definite term of employment: July 1, 2018 through June 30, 2019.

62.    O'Toole performed his obligations under the contract, yet in September 2018, he was forced to retire.

63.    As the actual and proximate result of this breach, O'Toole suffered lost wages and other employment benefits.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

a.    Placement in the position(s) in which he would have worked absent the defendant's discriminatory treatment, or, in lieu thereof, front pay;

b.    Injunctive relief;

c.    Pre-judgment interest;

d.    Attorneys' fees;

e.    Costs;

f.    Back pay; and

g.    Such other legal or equitable relief as may be appropriate or to

which he may be entitled.

**PLAINTIFF DEMANDS TRIAL BY A STRUCK JURY ON
ALL CLAIMS SO TRIABLE.**

**Respectfully submitted,**

**/s/ John D. Saxon**
**John D. Saxon**
**Alabama Bar No. ASB-3258-071J**
**Attorney for Plaintiff**

**OF COUNSEL:**

**JOHN D. SAXON, P.C.**
**2119 3rd Avenue North**
**Birmingham, AL 35203**
**Telephone: (205) 324-0223**
**Facsimile:  (205) 323-1853**
**Email:**    jsaxon@saxonattorneys.com
        **mailto:saustin@saxonattorneys.com**

**PLAINTIFF'S ADDRESS**:

Dr. Joseph F. O'Toole, Jr.
c/o **JOHN D. SAXON, P.C.**
2119 3rd Avenue North
Birmingham, AL 35203

**PLEASE SERVE DEFENDANTS BY**
**CERTIFIED MAIL RETURN RECEIPT REQUESTED**:

**THE DIOCESE OF BIRMINGHAM IN ALABAMA**
**c/o Bishop Robert J. Baker**
**2121 3rd Avenue North**
**Birmingham, AL 35203**

**REVEREND ROBERT J. SULLIVAN**
**THE DIOCESE OF BIRMINGHAM IN ALABAMA**
**2121 3rd Avenue North**
**Birmingham, AL 35203**

**JULIE EMORY-JOHNSON**
**THE DIOCESE OF BIRMINGHAM IN ALABAMA**
**2121 3rd Avenue North**
**Birmingham, AL 35203**